BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tara Del Gaizo, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Target Corporation,<br><br>Defendant. | Case No.: **'14CV0009 CAB BLM**<br><br>COMPLAINT<br><br><u>CLASS ACTION</u><br><br><u>JURY TRIAL DEMANDED</u><br><br>Judge:<br>Courtroom: |

Plaintiff Tara Del Gaizo ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Target Corporation ("Target"), and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.  This is a class action brought by Plaintiff, individually and on behalf of all similarly situated persons who made a credit or debit card purchase at Target stores and whose personal information was compromised as a result of a breach of Target's network that occurred on or about November 27, 2013 to December 15, 2013.

2.  Target is the second-largest discount retailer in the United States and has been selling to consumers and businesses for over fifty years. When customers purchase products in Target's retail stores using a credit or debit card, Target collects the customers' sensitive personal and financial information, including credit and debit card numbers, expiration dates, and card holder names. Target's customers, including Plaintiff and the Class members, who provided their personal information to Target to make a purchase, reasonably expected that by providing their personal information to one of the largest retail companies that it would be kept reasonably secure.

3.  However, contrary to reasonable customer expectations, Target failed to take reasonable steps to maintain the information in a secure manner or to use best practices to secure it. Target also failed to disclose to its customers at the time they used their credit or debit cards and provided Target with their personal information that Target would not maintain their customers' information in a reasonable manner and with best industry practices. This failure directly led to an enormous security breach that has directly affected upwards of 40 million Target customers.

4. Between November 27, 2013 and December 15, 2013, Target sustained a massive security breach that would not have occurred but for Target's failure to maintain adequate, reasonable, and industry-standard data security. The data breach placed customers' sensitive personal and financial information in the hands of cyber criminals, including customers' names, credit and debit card numbers, card expiration dates, and CVVs (collectively, "Personal Information"). Target knew or should have known that its inadequate security systems placed Target at an increased risk for a data breach, which directly and proximately caused the theft of Plaintiff's and the other Class members' Personal Information.

5. As a result of Target's failure to reasonably and adequately secure its network, the data breach occurred and Plaintiff's and the other Class members' Personal Information was compromised, placing them at an increased risk of fraud and identity theft, and causing direct financial expenses associated with credit monitoring, replacement of compromised credit, debit, and bank cards, and other measures needed to protect against fraudulent criminal activity.

6. Target's wrongful business practices constitute (i) unlawful business acts and practices in violation of California Bus. & Prof. Code §17200, *et seq.*, (ii) violation of California Data Breach Act, California Civ. Code §1798.80, *et seq.*, (iii) breach of contract, and (iv) breach of good faith and fair dealing. Target's wrongful business practices also implicate the equitable doctrine of money had and received.

7. Plaintiff, on behalf of herself and all Class members, seeks actual damages, equitable relief, injunctive relief, restitution and/or disgorgement, attorneys' fees, litigation expenses, and costs of suit because of Target's wrongful business practices.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 Class members and some of the members of the Class are citizens of states different from Defendant.

9. This Court has personal jurisdiction over Defendant because Defendant is authorized to business in the state of California and operates stores within this Judicial District.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a) because Defendant resides, is located, can be found, and/or conducts business in this District.

## PARTIES

11. Plaintiff Tara Del Gaizo is a resident of Chula Vista, California. Plaintiff is a regular shopper at Target stores and regularly uses her Target REDcard to make purchases. A Target REDcard is a card offered by Target that is directly linked to a person's debit or credit card. Plaintiff's Target REDcard is linked to her debit card and works the same way her debit card works. On or about December 3, 6, and 11, 2013, Plaintiff used her Target REDcard to purchase merchandise from a Target store located at 910 Eastlake Pkwy, Chula Vista, California. Plaintiff believed that Target would maintain her personal information in a reasonably secure manner and provided her information to Target on that basis. Had Plaintiff known that Target would not maintain her information in a reasonably secure manner, she would not have signed up for and made a purchase at Target using her Target REDcard.

12. Defendant Target Corporation is a Minnesota corporation, headquartered in Minneapolis, Minnesota. Target is one of the largest discount retailers in the United States with almost 1,800 retail stores.

## FACTUAL ALLEGATIONS

### Target Collects its Customers' Personal Information

13. Target is the second-largest discount retailer in the United States and is currently ranked 36th on the "Fortune 500" list of top US companies.[1] Target advertises and sells discounted merchandise directly to millions of consumers through its 1,797 retail stores in the United States.

14. When a customer makes a purchase at a Target retail stores using a credit and debit card, including Target's branded REDcard, Target collects information related to that card including the card holder name, the account number, expiration date, and card verification value (CVV), to be transmitted to a third party for completion of the payment.

15. Target recognizes that its customers' Personal Information is highly sensitive and must be protected. According to Target's December 11, 2013, Privacy Policy, "[b]y interacting with Target, [customers] consent to use of information that is collected or submitted as described in this privacy policy." Target states, "[w]e maintain administrative, technical and physical safeguards to protect your personal information. When we collect or transmit sensitive information such as a credit or debit card number, we use industry standard methods to protect that information."

### The Extensive Data Breach and Target's Failure to Promptly Notify

16. Sometime between November 27, 2013 and December 15, 2013, hackers gained access to Target's data network and stole the credit and debit card information for about 40 million Target shoppers. According to reports, the

---

[1] http://money.cnn.com/magazines/fortune/fortune500/2013/snapshots/2303.html?iid=F500_fl_list

breach affected only customers of Target's brick-and-mortar U.S. store locations and not those who shopped at Target's online stores.[2]

17.     On December 19, 2013, Target issued a press release confirming that hackers were able to gain unauthorized access to Target's payment card data.[3]  According to Target, the hackers stole data including customer names, card expiration dates, and the card verification value (CVV), also known as the card security code (CSC).[4]

18.     Target initially stated and told customers that PIN numbers were not compromised by the breach.[5]  This was false and deceptive.  On December 27, 2013, Target finally disclosed that PIN data was stolen during the breach. Nevertheless, even then, Target deceptively downplayed the PIN data theft, including by only telling customers that "strongly encrypted PIN data was removed from our system during the data breach incident," "your debit card account has not been compromised," and "PINs are safe and secure."[6]  Despite Target's statements, experts believe the stolen PIN data may reasonably be decrypted and fraudulently used.[7]

19.     News of the breach was first reported on December 18 by computer security and cybercrime blogger Brian Krebs on his blog, krebsonsecurity.com. In breaking the story, Krebs confirmed with independent fraud analysts that Target had been breached after they were able to buy a number of stolen card

---

[2] http://krebsonsecurity.com/2013/12/sources-target-investigating-data-breach/

[3] https://corporate.target.com/discover/article/Important-Notice-Unauthorized-access-to-payment-ca

[4] *Id.*

[5] *Id.*; https://corporate.target.com/about/payment-card-issue.aspx?ref=sr_shorturl_paymentcardresponse (click on "e-mail to guests (sent on 12.20.13)").

[6] https://corporate.target.com/about/payment-card-issue.aspx?ref=sr_shorturl_paymentcardresponse (click on "pin update (posted on 12.27.13)").

[7] http://www.npr.org/2013/12/29/258009006/targets-word-may-not-be-enough-to-keep-your-stolen-pins-safe; *see also* http://www.nbcnews.com/video/nightly-news/53927467/#53927467

accounts from a well-known "card shop" – an online store advertised in cybercrime forums as a place where thieves can reliably buy stolen credit and debit cards.

20. Investigators believe that the data was obtained via software installed on the machines at Target stores that customers used to swipe their credit cards when paying for merchandise.[8]  Through this software, the thieves were able to steal the name, account number, expiration date, and CVV for each card that was swiped.

21. The type of data stolen – also known as "track data" – allows crooks to create counterfeit cards by encoding the information onto any card with a magnetic stripe.[9]  Thus, the thieves could take the credit card information and create a fake credit card that could be swiped and used to make purchases as if it were the real credit card.  Additionally, the thieves could reproduce stolen debit cards and use them to withdraw cash from ATMs.[10]

22. Thieves could not have accessed Target's network and stolen consumers' Personal Information but for Target's inadequate security protections.  Target failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information that was compromised.

23. Despite the risk posed to consumers, Target did not immediately notify its customers of the breach.  Target chose to release a statement on its corporate website; not target.com, the shopping website regularly accessed by consumers.  Additionally, in its December 19 statement, Target also claimed to "have worked swiftly to resolve the incident," and downplayed the threat to

---

[8] http://www.cbsnews.com/news/target-confirms-massive-credit-debit-card-data-breach/
[9] http://krebsonsecurity.com/2013/12/sources-target-investigating-data-breach/
[10] http://krebsonsecurity.com/2013/12/sources-target-investigating-data-breach/

consumers by assuring that "[t]here is no indication that PIN numbers have been compromised on affected bank issued PIN debit cards or Target debit cards" and that the CVV codes that were stolen are not the same as the three-digit security code on the back of consumers' cards.[11]  These claims by Target impart a false sense to security to affected consumers.  Target also downplayed the risk, urging consumers to merely "check [their] account for any suspicious or unusual activity."

24. Target's failure to promptly and effectively inform customers earlier of the data theft left an untold number vulnerable to attack.

25. Despite advising Target customers who used a Target branded REDcard to "contact Target" if something "appears fraudulent," many customers reported that they were unable to ascertain whether their card was impacted because Target's REDcard website repeatedly timed out and the consumer toll-free number was inundated by complaints, making it impossible to check if any fraudulent charges had been made.[12]

26. Although Target is not disclosing exactly how the breach occurred, industry experts have speculated on how the breach occurred.  Ken Stasiak, founder and CEO of Secure State, a Cleveland-based information security firm that investigates data breaches like this one suspected that this breach was perpetrated by organized crime.  Stasiak's theory is that the hackers were able to breach Target's main information hub and then wrote a code that gave them access to the company's point of sale system and all of its cash registers.  That access allowed the hackers to capture the data from shoppers' cards as they were swiped.  Independent research into the sale of the Personal Information revealed

---

[11] https://corporate.target.com/about/shopping-experience/payment-card-issue-FAQ#q5880

[12] http://www.cbsnews.com/news/customers-seeing-red-over-targets-hacking-response/

that the proprietor of the online store selling the information on the black market is likely located in Russia.[13]

27. Similarly, James Lyne, global head of security research for the computer security firm Sophos, says something clearly went wrong with Target's security measures. "Forty million cards stolen really shows a substantial security failure," he says. "This shouldn't have happened."[14]

**The Data Breach Harmed Plaintiff and Other Class Members**

28. As a result of Target's unfair, inadequate, and less then reasonable security, cyber-criminals now possess the Personal Information of Plaintiff and the other Class members. While credit card companies offer protection against unauthorized chargers, the process is long, costly, and frustrating. Physical cards must be replaced, credit card information must be updated on all automatic payment accounts, and victims must add themselves to credit fraud watch lists, which substantially impair victims' ability to obtain additional credit. Compounding the injury to Plaintiff and the Class is the fact that their Personal Information was stolen during the height of holiday shopping and travel season when consumers are in particular need of their cards.

29. Immediate notice of the breach is essential to obtain the best protection afforded by these services. As alleged, Target failed to provide such immediate notice, thus further exacerbating the damages sustained by Plaintiff and the other Class members resulting from the breach.

30. Cognizant of the severity of their mistake, Target recommended that consumers affected by this breach "remain vigilant for incidents of fraud and identity theft by regularly reviewing your account statements and monitoring free credit reports. If you discover any suspicious or unusual activity on your accounts or suspect fraud, be sure to report it immediately to your financial

---

[13] http://krebsonsecurity.com/2013/12/whos-selling-credit-cards-from-target/
[14] http://abcnews.go.com/Business/wireStory/answers-questions-target-data-breach-21277703

8  Case No.:
COMPLAINT

Blood Hurst & O'Reardon, LLP

1  institutions. In addition, you may contact the Federal Trade Commission ("FTC") or law enforcement to report incidents of identity theft or to learn about steps you can take to protect yourself from identity theft."[15]

31. Personal information is a valuable commodity. A "cyber black-market" exists in which criminals openly post stolen credit card numbers, Social Security numbers, and other personal information on a number of Internet websites.

32. The Personal Information that Target lost, including Plaintiff's identifying information, is "as good as gold" to identity thieves because identity thieves can use victims' personal data to open new financial accounts and incur charges in another person's name, take out loans in another person's name, incur charges on existing accounts, or clone ATM, debit, or credit cards.

33. Plaintiff's and Class members' Personal Information stolen from Target flooded the underground black markets with batches of one million card numbers selling from $20 to $100 per card.[16] The online black markets also provided purchasing thieves with the zip code and location of the Target store where the information was stolen.[17] This allowed thieves to make same-state purchases, thus avoiding any blocks from banks who suspect fraud.

34. Although Target offered free credit monitoring to customers, the credit monitoring services do nothing to prevent credit card fraud. Credit monitoring only informs a consumer of instances of fraudulent opening of new accounts, not fraudulent use of existing credit cards. Thus, Plaintiff and the other Class members must take additional steps to protect their credit as described above.

---

[15] https://corporate.target.com/discover/article/Important-Notice-Unauthorized-access-to-payment-ca
[16] http://krebsonsecurity.com/2013/12/cards-stolen-in-target-breach-flood-underground-markets/
[17] *Id.*

9                                    Case No.:
COMPLAINT

# CLASS ACTION ALLEGATIONS

35.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action as a national class action for herself and all members of the following class of similarly situated individuals and entities (the "Class"):

> All persons and entities in the United States who used a credit or debit card at Target stores and whose personal information was compromised as a result of the breach that occurred on or around November 27, 2013 to December 15, 2013.

36.  Excluded from the Class are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant.

37.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleged the same claims.

38.  *Numerosity*.  The Class is so numerous that joinder of all members is unfeasible and not practical.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that millions of persons had their Personal Information compromised in the data breach that occurred in or around November 27, 2013 to December 15, 2013.

39.  *Commonality*.  Questions of law and fact common to all Class members exist and predominate over any questions affecting only individual Class members, including, *inter alia*:

    a. whether Target engaged in the wrongful conduct alleged herein;

    b. whether Target's conduct was deceptive, unfair, and/or unlawful;

    c. whether Target's conduct was likely to deceive a reasonable person;

d. whether Target's failure to inform its customers that it did not use reasonable and industry-standard safety measures appropriate to the nature and scope of the information compromised in the data breach;

e. whether Target violated California Business and Professions Code §17200, *et. seq.*;

f. whether Plaintiff and Class members are entitled to recover actual damages, statutory damages, and/or punitive damages;

g. whether Plaintiff and Class members are entitled to restitution, disgorgement, and/or other equitable relief.

40. **Typicality**. Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members were injured through the uniform misconduct described above and assert the same claims for relief.

41. **Adequacy**. Plaintiff and her counsel will fairly and adequately represent the interests of the Class members. Plaintiff has no interests antagonistic to, or in conflict with, the interests of the Class members. Plaintiff's lawyers are highly experienced in the prosecution of consumer class actions and complex commercial litigation.

42. **Superiority**. A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiff and the Class members. Plaintiff and the Class members have been harmed by Target's wrongful actions and/or inaction. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Target's wrongful actions and/or inaction.

43. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

44. Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2) because Target has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

45. The expense and burden of litigation would substantially impair the ability of Plaintiff and Class members to pursue individual lawsuits to vindicate their rights. Absent a class action, Target will retain the benefits of its wrongdoing despite its serious violations of the law.

## COUNT I

### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §17200, *et seq.*

46. The preceding factual statements and allegations are incorporated by reference.

47. Target engaged in unfair, unlawful, and fraudulent business practices in violation of the UCL.

48. California Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Target violated (and, on information and belief, continues to violate) California Business & Professions Code §17200 by engaging in the above-described and prohibited unlawful, unfair, fraudulent, deceptive, untrue, and misleading acts and practices.

49. Target violated the UCL by accepting and maintaining Plaintiff's and the other Class members' Personal Information but failing to take reasonable steps to protect it. In violation of industry standards and best practices, Target also violated consumer expectations to safeguard Personal Information and failed to tell consumers that it did not have reasonable and best practices safeguards in place.

50. Target also violated the UCL by failing to immediately notify Plaintiff and the other Class members of the data breach. If Plaintiff and the other Class members had been notified in an appropriate fashion, they could have taken precautions to better safeguard their Personal Information.

51. Target's above-described wrongful acts and practices also constitute "unlawful" business acts and practices in violation of California's fraud and deceit statutes, Civil Code §§1572, 1573, 1709, 1711, California's Data Breach Act, Civil Code §1798.80, *et seq.,* Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law, including money had and received. Plaintiff and Class Members reserve the right to allege other violations of law Target committed constituting unlawful business acts or practices violating California Business and Professions Code §17200.

52. Target's above-described wrongful acts and practices also constitute "unfair" business acts and practices, in that the harm caused by Target's above wrongful conduct outweighs any utility of such conduct, and such conduct (i) offends public policy, (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused (and will continue to cause) substantial injury to consumers, such as Plaintiff and Class members. There were reasonably available alternatives to further Target's legitimate business interests, including using best practices to protect the Personal Information, other than Target's wrongful conduct described herein.

53. Plaintiff alleges violations of California consumer protection and unfair competition laws resulting in harm to consumers. Plaintiff asserts violations of public policy against engaging in unfair competition, and deceptive conduct towards consumers. This conduct also constitutes violations of the "unfair" prong of California Business and Professions Code §17200.

54. On information and belief, Target's above-described unlawful, fraudulent, and unfair business acts and practices, except as otherwise indicated

herein, continue to this day and are ongoing. As a direct and/or proximate result of Target's unlawful, unfair, and fraudulent practices, Plaintiff and Class members have suffered injury in fact and lost money in connection with their credit or debit purchases at Target stores during the time of the data breach, for which they are entitled to compensation – as well as restitution, disgorgement, and/or other equitable relief.

55.  Plaintiff, for herself and the Class members, also is entitled to injunctive relief, under California Business and Professions Code §§17203, 17204, to stop Target's above-described wrongful acts and practices and require Target to maintain adequate or reasonable security measures to protect the Personal Information in its possession or, in the alternative, for restitution and/or disgorgement.

## COUNT II

**Violation of California Data Breach Act**
**Cal. Civ. Code §1798.80, *et seq*.**

56.  The preceding factual statements and allegations are incorporated by reference.

57.  Section 1798.82 of the California Civil Code provides, in pertinent part, as follows:

> (a) Any person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.
>
> (b) Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery,

if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

(c) The notification required by this section may be delayed if a law enforcement agency determines that the notification will impede a criminal investigation. The notification required by this section shall be made after the law enforcement agency determines that it will not compromise the investigation.

(d) Any person or business that is required to issue a security breach notification pursuant to this section shall meet all of the following requirements:

> (1) The security breach notification shall be written in plain language.
>
> (2) The security breach notification shall include, at a minimum, the following information:
>
>> (A) The name and contact information of the reporting person or business subject to this section.
>>
>> (B) A list of the types of personal information that were or are reasonably believed to have been the subject of a breach.
>>
>> (C) If the information is possible to determine at the time the notice is provided, then any of the following: (i) the date of the breach, (ii) the estimated date of the breach, or (iii) the date range within which the breach occurred. The notification shall also include the date of the notice.
>>
>> (D) Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.
>>
>> (E) A general description of the breach incident, if that information is possible to determine at the time the notice is provided.
>>
>> (F) The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number.

\* \* \*

(f) Any person or business that is required to issue a security breach notification pursuant to this section to more than 500 California residents as a result of a single breach of the security system shall electronically submit a single sample copy of that security breach notification, excluding any personally identifiable information, to the Attorney General. A single sample copy of a security breach

notification shall not be deemed to be within subdivision (f) of Section 6254 of the Government Code.

(g) For purposes of this section, "breach of the security of the system" means unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the person or business. Good faith acquisition of personal information by an employee or agent of the person or business for the purposes of the person or business is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosure.

58. The data breach constituted a "breach of the security system" of Target.

59. Plaintiff's names, credit and debit card numbers, card expiration dates, and CVVs constitute "personal information."

60. Target unreasonably delayed in informing anyone about the breach of security of Class members' confidential and non-public information after Target knew the data breach had occurred.

61. Target failed to disclose to Class members without unreasonable delay and in the most expedient time possible, the breach of security of consumers' Personal Information when they knew or reasonably believed such information had been compromised.

62. Upon information and belief, no law enforcement agency instructed Target that notification to Class members would impede investigation.

63. Pursuant to Section 1798.84 of the California Civil Code:

(a) Any waiver of a provision of this title is contrary to public policy and is void and unenforceable.

(b) Any customer injured by a violation of this title may institute a civil action to recover damages.

(c) In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred dollars ($500) per violation for a violation of Section 1798.83.

\*\*\*

16  
COMPLAINT  
Case No.:

(e) Any business that violates, proposes to violate, or has violated this title may be enjoined.

64. Plaintiff individually and on behalf of the Class seeks all remedies available under Cal. Civ. Code §1798.84, including, but not limited to: (a) damages suffered by Class members as alleged above; (b) statutory damages for Target's willful, intentional, and/or reckless violation of Cal. Civ. Code §1798.83; and (c) equitable relief.

65. Plaintiff on behalf of herself and the Class also seeks reasonable attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

## COUNT III

### Money Had and Received

66. The preceding factual statements and allegations are incorporated by reference.

67. By its above-described wrongful actions and/or inaction, Target holds money – *i.e.*, the money charged and collected by Plaintiff and the other Class members to Target for purchases at its retail locations – that in equity and good conscience belongs to Plaintiff and the Class members.  Target should be compelled to refund such wrongfully charged and collected money paid by Plaintiff and the other Class members under the common law equitable doctrine of money had and received.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter an Order:

A. Certifying the Class under Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing her undersigned counsel as Class Counsel;

B. Finding that Target's conduct was deceptive, unfair, and unlawful as alleged herein;

C. Enjoining Target from engaging in deceptive, unfair, and unlawful business practices alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members statutory damages;

F. Awarding Plaintiff and the other Class members restitution and disgorgement;

G. Requiring Target to provide the appropriate credit monitoring and identify theft prevention services to Plaintiff and the other Class members;

H. Awarding Plaintiff and other Class members pre-judgment and post-judgment interest;

I. Awarding Plaintiff and the other Class members reasonable attorneys' fees and costs; and

J. Granting such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, for herself and all Class members, respectfully demands a trial by jury on all of her claims and causes of action so triable.

Dated:  January 2, 2014

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)

By:      *s/ Timothy G. Blood*
         TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

*Attorneys for Plaintiff*


**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 2, 2014.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com